[Civ. No. 7587.   Third Dist.   Mar. 10, 1949.]

J. W. WOOD et al., Respondents, v. WALTER METZEN-BAUM et al., Appellants.

Walter Metzenbaum, in pro. per., for Appellants.

John F. McCarthy, Henry D. Lawrence and Rowland & Craven for Respondents.

THOMPSON, J.—This is a purported appeal from a judgment of dismissal of the cross-complaint of defendants Walter Metzenbaum and Rose Metzenbaum, rendered pursuant to an order sustaining plaintiffs' demurrer thereto, with leave to amend. Said defendants refused to amend within the time allowed, or at all. The suit based on the complaint and answer is still pending.

Two questions are involved: First, Is the judgment appealable? Second, Does the cross-complaint adequately state a cause of action under section 442 of the Code of Civil Procedure?

The amended complaint alleges that the defendant Walter Metzenbaum, who is an attorney at law and appears for appellants, was a duly licensed real estate broker and that the other named defendants are his wife, daughter, son and the son's wife; that Oulton Land Company owned the "Oulton Ranch" on Twitchell Island in Sacramento County, described in Exhibit "A" attached to the complaint, which was subject to an oil and gas lease held by the Standard Oil Company of

California, by the terms of which lease the owner of the land was entitled to one-eighth royalty in all oil or gas extracted therefrom. It is alleged that on August 15, 1943, plaintiffs employed said defendants Walter Metzenbaum and M. Metzenbaum as their agents and brokers to purchase the land for plaintiffs in consideration of one-third of said one-eighth of all royalties paid to plaintiffs under said oil and gas lease as defendants' commissions for negotiating said purchase; that at all times the Oulton Land Company was willing to sell said land for the sum of $110,000, which fact was known to the defendants but unknown to plaintiffs, and that the defendants falsely represented to plaintiffs that the sum of $125,000 was the least the owner would accept for said land; that relying on said false representations plaintiffs executed with the defendants as their brokers on August 19, 1943, a written agreement to pay the owner of said land said sum of $125,000, in consideration of which services plaintiffs agreed to pay the defendants one-third of said one-eighth royalties as broker's commissions for negotiating the purchase, and plaintiffs thereupon agreed to and did purchase said land, and deposited with Title Insurance and Guaranty Company, the sum of $10,000 as part payment of the purchase price thereof; that thereafter, and on August 21, 1943, the defendants fraudulently entered into a written contract with the Oulton Land Company to purchase the land in their own names and they did purchase it for the sum of $110,000, payable in the sum of $40,000 cash, plaintiffs' $10,000 deposit being included therein, and the balance of $70,000 to be paid the owner by defendants' notes in said sum, secured by their trust deed to the property; that plaintiffs had no knowledge of said purchase of land by the defendants for said sum of $110,000, until June 1, 1945; that defendants, at the time of acquiring their title to the land, conveyed it to plaintiffs, pursuant to their agreement of August 15th, for the pretended purchase price of $125,000, retaining their one-third of one-eighth of all royalties derived from the oil and gas lease, and also wrongfully and fraudulently retaining said sum of $15,000, being the difference between their purchase price of $110,000 and said sum of $125,000, which they represented to plaintiffs to be the amount paid to Oulton Land Company. The complaint further alleges that subsequent to defendants' purchase of the land in September, 1943, they were paid and wrongfully retained the sum of $8,108.06 in royalties from the oil and gas lease without the knowledge or consent of plaintiffs, and that defendants

wrongfully and fraudulently converted said sum of $15,000 to their own use and benefit. The amended complaint prays for judgment for said sum of $15,000, with interest, for an accounting of all moneys received by the defendants from royalties paid to them from the oil and gas lease, and for judgment for the amount thereof belonging to plaintiffs, together with interest, and for a decree quieting title to the land in plaintiffs, and determining that defendants have no right, title or interest in said land.

The defendants, Walter Metzenbaum and his wife Rose, jointly answered the amended complaint, denying the material allegations thereof, including the alleged fraudulent statements, concealed profits of the transaction and conduct, and also affirmatively alleged as defenses that the said Walter and M. Metzenbaum purchased the land and oil and gas lease from Oulton Land Company in their own names and thereafter sold the land and two-thirds of one-eighth of the royalties to be derived from said oil and gas lease to plaintiffs; that the alleged oral agreement employing them as brokers to purchase the land from the owners was a unilateral contract, lacking mutuality and therefore void under section 1624 of the Civil Code.

The defendants Walter and Rose Metzenbaum also filed a cross-complaint, to which plaintiffs demurred on the grounds that it fails to state facts sufficient to constitute a cause of action, and that another suit was previously filed and is now pending in the city and county of San Francisco, involving the same issues. The cross-complaint alleges that plaintiffs' complaint asserts they agreed with the defendants, on August 19, 1943, that defendants, *as their brokers and agents,* would purchase from the owners the land in question and the oil and gas lease, upon terms specified, in consideration of one-third of one-eighth of the royalties to be derived from the oil and gas lease as commissions, but that *"it was manifested* that the minds of the said defendants and the plaintiffs had never met and that, *if the claims of the plaintiffs that said defendants acted as agents of plaintiffs . . . was well founded and true,* that a mutual mistake had taken place, . . . and that no actual contract had been made" (italics added); that the *defendants believed* they were making an actual sale of the land to plaintiffs, and that a mutual mistake thereby occurred. The cross-complaint does not purport to recite the conversation or facts with relation to the agreement upon which the defendants assume that the alleged mistake was founded. It

does state that defendants purchased the land from the former owners and that they sold and conveyed it to plaintiffs for $125,000, the sum of $55,000 of which was paid by plaintiffs to them in cash, and the balance of $70,000 was to be paid upon terms specified and that a trust deed was executed by plaintiffs to secure said unpaid portion of the purchase price; that plaintiffs took possession of the land and have retained and farmed it for more than two years. The cross-complaint states that defendants elect to rescind the entire transaction and prays for an accounting. No fraud or previous notice of rescission is alleged. It is not alleged defendants suffered any loss by the contract. Defendants' election to rescind is evidently conditional, for it is merely stated that "*if* the claim of the plaintiffs that said defendants acted as agents of plaintiffs" is well founded, a mutual mistake occurred and they then elect to rescind the transactions.

From the judgment dismissing the cross-complaint for failure to amend that pleading, this appeal was perfected.

The respondents contend that an appeal under Section 963 of the Code of Civil Procedure does not lie from the judgment dismissing the cross-complaint since the judgment is not *final* because the chief action remains to be tried in which the question of the agency of the defendants as plaintiffs' brokers is a definite issue to be determined therein.

We are of the opinion the judgment dismissing the cross-complaint, under the circumstances of this case, is not appealable. The chief action to recover undisclosed money retained by the defendants as plaintiffs' agents and brokers is still pending. The complaint alleges that relationship between the parties in that transaction. The answer denies that allegation. Defendants' conditional rescission is founded exclusively upon the alleged mistake in that regard. Plaintiffs must prove in the pending action their alleged contract of employment of defendants as their agents and brokers, to entitle them to recover judgment. That is a distinct issue in the case. The judgment of dismissal of the cross-complaint is therefore not a final judgment.

In *Sjoberg* v. *Hestorf,* 33 Cal.2d 116 [199 P.2d 668], recently decided by the Supreme Court, which was an appeal from an order denying defendant's petition for arbitration, it was held that the petition was "essentially a cross-complaint for specific performance of a contract to arbitrate" and that "its dismissal did not terminate the main action." The appeal was therefore dismissed by the Supreme Court on the ground

*that the order was not appealable.* The court said:

"Under California procedure there is ordinarily only one final judgment in an action. [Citing authorities.] A cross-complaint is not considered sufficiently independent to allow a separate final judgment to be entered upon it [citing authorities], unless the judgment or order on the cross-complaint may be considered final as to some of the parties. . . .

"The question remains whether the order may be considered a final judgment in a collateral proceeding growing out of the action. . . .

". . . An appeal is allowed if the order is a final judgment against a party in a collateral proceeding growing out of the action. . . . It is not sufficient that the order determine finally for the purposes of further proceedings in the trial court *some distinct issue in the case*; it must direct the payment of money by appellant or the performance of an act by or against him. [Citing authorities.] There is no such direction in the present case. If appellants have a right to arbitration they may assert it on the appeal from the final judgment in the contract action. Thus no greater hardship will result than in any case where a party is forced to stand trial because of an erroneous ruling of the trial court. The appeal is dismissed." (Italics added.)

The foregoing language appears to apply to the situation in the present case.

We therefore conclude that the order and decree dismissing the cross-complaint for failure of the defendants and cross-complainants to amend that pleading within the time allowed by the court or at all, after the demurrer thereto had been sustained with a specified time granted in which to amend it, is not such final judgment or order from which an appeal lies under section 963 of the Code of Civil Procedure. That appears to be true in this case because the chief action, upon which the cross-complaint was founded, is still pending and undetermined on its merits, in which action substantially the same issues are presented by the amended complaint and answer which were raised by the cross-complaint. It is therefore not necessary for us, at this time, to pass upon the sufficiency of the allegations of the cross-complaint.

The purported appeal from the order sustaining the demurrer to the cross-complaint, and dismissing that pleading for failure to amend it within the time allowed, or at all, is therefore dismissed.

Adams, P. J., and Peek, J., concurred.